## The Providence Athenæum v. Benjamin Tripp, City Treasurer.

An incorporated library, the ownership of which is in the corporation, and the privilege of using which is confined to its stockholders, their immediate families, and their licensees, is not a "public library," although its constitution provides that any one can acquire the right to use it by paying fifteen dollars and thereby becoming a stockholder; and its property is consequently not exempted from taxation by the provisions of chapter 37, section 2, of the Revised Statutes, which exempts therefrom "public libraries and the land and buildings used in connection therewith."

Assumpsit brought by the plaintiff, a corporation duly organized under the laws of Rhode Island, against the defendant, city treasurer of the city of Providence, to recover back the amount of taxes assessed by said city against the plaintiff corporation in the years 1868 and 1869, with interest from the time of their payment, amounting respectively to $400.04 and $395.09, said taxes having been paid by the plaintiff corporation under protest.

A jury trial having been waived, the case was submitted to the court in fact and law upon an agreed statement of facts,

from which it appeared that from the year 1844 to the year 1855, the plaintiffs were regularly assessed by, and paid a tax upon their real property to, the city of Providence, said taxes during that period, as all taxes assessed by the city since, including all state, city, school and other taxes, but that from the year 1855 to the year 1867, both inclusive, no tax was assessed on the property of the plaintiffs.

The charter and by-laws of the plaintiff corporation were admitted in evidence. Such portions thereof as are pertinent to the case are sufficiently stated in the opinion of the court.

*Hayes and James Tillinghast, for the plaintiff:—*

Under the statute law of the state, by which alone the city may assess and collect any tax, the real estate of the plaintiffs was exempt from taxation. Previously to the January session, 1855, of the General Assembly, the property of the Athenæum was taxed by the city of Providence. At that session the law relating to the assessing and collecting of taxes was carefully revised. By the first section of the act referred to, " public libraries and the land and buildings used in connection therewith," were made exempt from taxation. The same provision was incorporated in the Revised Statutes in 1857, and was in force in the years 1868 and 1869. If the Providence Athenæum was a " public library," then it, with its land and building used in connection therewith, were strictly within the provision of exemption.

Chief Justice Shaw held in the case of *Commonwealth* v. *Wilkinson,* 16 Pick. 175, cited in Angell and Durfee on Highways, § 9, that " a turnpike road is a public highway established by public authority for public use," and " was to be regarded as a public easement " *** " Every traveller has the same right to use it, paying the toll established by law, as he would have to use any other public highway." In like manner, " any individual who shall pay into the treasury fifteen dollars, can be a stockholder or proprietor of the corporation known as the Providence Athenæum," and entitled to one share of the joint stock of the corporation, which shall be transferable. And he shall be entitled to all the rights and privileges, secured to stock-

holders, or proprietors, by the laws of the corporation, and subject to all the rules and regulations therein made and provided. Art. 8, Constitution. The act incorporating the Athenæum was passed January, 1836, and the above article of the constitution was adopted in the month of February following, and has been in force ever since. The legislation of the state, both previously and subsequently to act of 1855, upon this and other subjects of taxation, and the uniform practice of all the towns and cities of the state respecting the same, show that the construction of said act claimed for it by the plaintiffs was the construction given to it by the General Assembly. In the public laws published between 1822 and 1844, page 701, houses for public religious worship were exempted from taxation. At that time it is doubtful if there was a house for free religious worship in the state, yet no church edifice has ever been taxed since.

At the January session of the General Assembly in 1867, certain electors in the several towns and cities were authorized to appropriate a certain sum of money for the foundation therein of "*free* public libraries," and at the January session, 1869, adjoining towns and school districts were empowered to establish "*free* public libraries." · And at its last January session, within a year after the first tax was collected of the plaintiffs under the new construction of the law given by the assessors of the city of Providence, in 1868, the legislature put beyond question their meaning upon this subject, in an act which declared that not only public libraries and the land and buildings used in connexion therewith, but also all the property *real* and *personal* held for or by any *free public library* or *incorporated library society*, should be exempt from taxation.

*Parkhurst, City Solicitor of the city of Providence, for the defendant,* contended that the Providence Athenæum was not a "public library," and therefore not exempted from taxation under the statute referred to by the plaintiff.

DURFEE, J. The question raised in this case is, whether the real estate of the Providence Athenæum was privileged from taxation by the Revised Statutes, chapter 37, section 2, which

exempts "public libraries, and the land and buildings used in connexion therewith."

The Providence Athenæum was incorporated in 1836, the corporation being entitled under its charter, which is very general in its language, to "have all the privileges and powers incident to corporations instituted for library and scientific purposes." A "constitution," adopted February 29, 1836, provides that "any individual who shall pay into the treasury fifteen dollars, shall be a stockholder or proprietor, and entitled to one share of the joint stock of the corporation, which shall be transferable. And he shall be entitled to all the rights and privileges secured to stockholders, or proprietors, by the laws of the corporation, and subject to all the rules and regulations therein made and provided. The board of directors may admit annual subscribers to the privileges of the library, on such terms and conditions as they may from time to time prescribe." It also provides that each stockholder or proprietor "shall be liable for all assessments voted by the corporation, provided the same do not exceed five dollars per annum on each share." This constitution is open to amendment, upon due notice, at any meeting of the corporation, by a vote of two-thirds of the members present at such meeting.

By the by-laws, the privileges of the Athenæum are accorded to stockholders and their immediate families, to temporary transferrees of shares, to persons authorized by written orders of stockholders to take out books on their shares, and, for a month's time, to strangers from abroad introduced by a stockholder, except that strangers are not to have the right to take out books. By the "regulations of the library, reading room, and other rooms," it is provided that "no book shall be delivered to any one excepting a stockholder, or one of the immediate family of a stockholder, or upon the written order of a stockholder," unless it be to some individual specially authorized by the board of directors "to make use of the Athenæum, under such restrictions and regulations as they may deem it advisable to impose, for purposes connected with objects of public utility, or in order to facilitate inquiry or investigation."

It appears or is inferrible from this statement, that the ownership of the library is in the corporation, and that the privilege of using it is confined to the stockholders, their immediate families, and their licensees. The public, as such, have no right there. What claim, then, has the Athenæum, to be deemed a public library? The counsel for the corporation say it is public, because anybody can acquire the right to use it by paying fifteen dollars and becoming a stockholder. They say it is like a turnpike-road or railway, which, though held by a corporation, is yet a public highway, because the public has the right to travel thereon upon payment of the regular toll or fare. The analogy, however, is very imperfect. The person who wishes to travel on a railroad or turnpike-road is not obliged to become a stockholder in the corporation in order to acquire the right to do so. If such were the requirement, the claim of the road to be called a public highway would hardly be allowed. The traveller uses the road as a matter of right, paying the proper toll or fare, which is simply a reasonable equivalent for the use. But furthermore, the turnpike or railway company is bound to keep its road in suitable repair for the public travel. If it neglects this duty it is liable to indictment, and to a forfeiture of its charter. There is no corresponding obligation resting on the plaintiff corporation. It is not bound to maintain a library for the public use. There is nothing in the agreed statement to show that it may not, without the violation of any legal duty to the public, sell its library, or that it may not rescind the article, allowing every person to become a stockholder on the payment of fifteen dollars, and limit the stockholders to the present number. The library, in fact, however wide may be the sphere of its usefulness, is, for any thing that appears, merely the private property of the corporation. The public, as such, has no claim upon it whatever.

The act exempting public libraries from taxation was passed in 1855. The agreed statement shows that from 1855 to 1868 the real estate of the Athenæum was not taxed, though it had previously been taxed. This practice, immediately following the passage of the act, is entitled to respectful consideration in determining its construction. But while giving the practice its

due weight, we are too clearly of the opinion that the Athenæum library is not a public library, to hold it to be such within the meaning of the act.

*We give the defendant judgment for his costs.*